UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-0289** |
| **JOHN C. AUSTER** | **SECTION: "S" (6)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that John C. Auster's motion to suppress evidence of communications between John C. Auster and his psychologist under the psychotherapist-patient privilege is **GRANTED**.

**IT IS FURTHER ORDERED** that the "Motion to Dismiss Indictment" is **DENIED** to permit the Government to 1) dismiss the indictment or 2) proceed with the prosecution of the case without the evidence of communications between the psychotherapist and patient. (Document #56.)

### I. BACKGROUND

John C. Auster is a retired New Orleans Police Department officer currently receiving benefits as a result of a workman's compensation consent judgment rendered in 1989. Cannon Cochran Management Services, Inc. (CCMSI) manages the claim for the City of New Orleans. In September 2006, CCMSI informed Auster that it would stop paying a portion of his benefits

on October 1, 2006. On September 13, 2006, Auster discussed the pending termination of his benefits with his psychologist, Dr. Fred E. Davis. Dr. Davis sent CCMSI a letter advising that it was Auster's position that any action by CCMSI would serve as provocation to "carry out his plan of violent retribution against a list of persons he feels have caused him injury," including personnel of CCMSI, the City of New Orleans, and the New Orleans Police Department. Dr. Davis further informed that Auster indicated that he had created stockpiles of weapons and supplies.

A grand jury charged Auster with unlawfully obstructing, delaying, affecting, and attempting to obstruct, delay, and affect commerce by extortion, in violation of 18 U.S.C. § 1951.[1] Specifically, the grand jury charged that Auster attempted

> to obtain the property of CCMSI with the consent of CCMSI having been induced by the wrongful use of threatened force, violence and fear, in that the defendant did communicate to CCMSI, via his treating psychotherapist, that he had stockpiles of weapons that he would use to seek violent retribution against CCMSI personnel if CCMSI were to reduce his benefits.

Auster filed a "Motion to Dismiss Indictment."

---

[1] Section 1951 provides in pertinent part:
   (a) Whoever in any way or degree obstructs, delays, of affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
   . . . .
      (b) As used in this section–
   . . . .
         (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

The motion to dismiss the indictment is denied . "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."  See United States v. Calandra, 94 S.Ct. 613,618 (1974).  Auster is not challenging the facial validity of the indictment, and "an indictment returned by a legally constituted grand jury . . ., if valid on its face, is enough to call for trial of the charge on the merits."  Costello v. United States, 76 S.Ct. 406, 409 (1956).  The court, however, addresses the issue whether evidence of privileged communication between Auster and Dr. Davis should be excluded in a criminal proceeding.

## II. DISCUSSION

Auster contends that the conversations that occurred during psychotherapeutic sessions are protected by privilege under Federal Rule of Evidence 501.  Auster argues that the privilege precludes the government from using the communications he made to his treating psychologist as a basis for criminal prosecution.

Rule 501 provides in relevant part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

A privilege protecting confidential communications between a psychotherapist and patient "promotes sufficiently important interests to outweigh the need for probative evidence."

Jaffee v. Redmond, 116 S.Ct. 1923, 1928 (1996) (internal quotation and citation omitted) (a civil case).  "Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears."  Id.  "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem."  Id. at 1929.  The privilege applies to confidential communications made to psychiatrists, psychologists, and licensed social workers in the course of psychotherapy.  Id.  The Supreme Court recognized that "there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist."  Id. at 1932 n.19.  The privilege announced in Jaffee was subsequently applied in criminal cases.  See United States v. Glass, 133 F.3d 1356 (10th Cir. 1998), United States v. Hayes, 227 F.3d 5478 (6th Cir. 2000), United States v. Chase, 340 F.3d 978 (9th Cir. 2003).

**A. Waiver**

The government contends that Auster waived the privilege because he communicated the threats to Dr. Davis, intending that they be passed on to CCMSI.

Auster was being treated *inter alia* for paranoia, anger, and depression, and CCMSI paid for the treatment because it was medically necessary.  During the session with Dr. Davis, Auster disclosed his anger and hostility at the prospect that CCMSI would discontinue this benefit.  The communication to his ongoing, treating psychotherapist was confidential and concerned the subject matter of Auster's treatment.  The court finds that there is no showing that Auster

4

knowingly or voluntarily waived his right to assert the privilege for any communications made to Dr. Davis.

**B. Dangerous person exception**

The government contends that the privilege must yield because the "dangerous person" exception applies. The government argues that Auster's threats were serious, Dr. Davis personally saw Auster with weapons, and he informed CCMSI on the same day that Auster made the threats.

In Hayes, the United States Court of Appeals for the Sixth Circuit reasoned that there was little correlation between the standard of care exercised by a treating psychotherapist in complying with the duty to exercise reasonable care to protect the foreseeable victim of a danger and "the applicability of the psychotherpist/patient privilege in criminal proceedings." 227 F.3d at 583.[2] The Court of Appeals declined to apply a "dangerous patient" exception, reasoning that it would be "unjust to condition the freedom of individuals on the competency of a treating psychotherapist," and that the "scope of a federal testimonial privilege should [not] vary depending upon state determinations of what constitutes 'reasonable' professional conduct." Id. at 584. The Court of Appeals stated that "psychotherapists will sometimes need to testify in court proceedings, such as those for the involuntary commitment of a patient, to comply with their duty to protect the patient or identifiable third parties." Id. at 585. "On the other hand, a

---

[2] The duty to protect now imposed on psychotherapists began with Tarasoff v. Regents of the University of California, 551 P.2d 334 (Cal. 1976). The Tarasoff duty lifts the blanket of confidentiality covering communications, but does not abrogate the testimonial privilege. See Chase, 340 F.3d at 985.

psychotherapist's testimony used to prosecute and incarcerate a patient who came to him or her for professional help cannot be similarly justified." Id. The Court of Appeals concluded that "the proposed 'dangerous patient' exception is unnecessary to allow a psychotherapist to comply with his or her professional responsibilities and would seriously disserve the 'public end' of improving the mental health of our Nation's citizens." Id.

In this case, Auster divulged his thoughts and made threats during a therapy session. Dr. Davis complied with the duty to protect by informing CCMSI of potential threats, but that compliance does not imply a duty to testify against Auster in a criminal proceeding. Dr. Davis served the private interest of the threatened employee by taking action to safeguard him; however, the public interest would not be served by allowing Dr. Davis to testify concerning confidential communications made in a therapy session.

## C. Crime-fraud exception

The government contends that crime-fraud exception to the psychotherapist-patient privilege should apply. The government argues that Auster used his doctors to relay his extortionate threats to take the head off of a CCMSI employee in a dispute over benefits.

The crime fraud exception "grew up in the shadow of the attorney-client privilege." In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 75 (1st Cir. 1999). The Court of Appeals explained the attorney-client privilege and the policy judgment for the exception as follows:

> The benefits of full and frank communication between clients and attorneys generally have been deemed to outweigh the costs of probative evidence foregone. The balance shifts, however, when a client communicates for the

> purpose of advancing a criminal or fraudulent enterprise.  Because such communications do not create a net benefit to the system, the rationale that underpins the privilege vanishes (or, at least, diminishes markedly in force).

Id. at 76.  The Court of Appeals concluded that communications made in furtherance of crime or fraud should be excluded from the privilege "because the mental health benefits, if any, of protecting such communications pale in comparison to the normally predominant principle of utilizing all rational means for ascertaining truth." Id. at 77.  "[T]he crime-fraud exception will apply only when the patient's purpose is to promote a particular crime or fraud." Id.  "Only when communications are intended directly to advance a particular criminal or fraudulent endeavor will their privileged status be forfeited by operation of this exception." Id.  The exception is a narrow one and should not chill clinically relevant speech. Id.  "[A] party invoking the crime-fraud exception must make a prima facie showing that the exception applies." Id. at 78.  The evidence must "give colour to the charge" and have some foundation in fact. Id.

For almost two decades, Auster has been under the care of Dr. Davis, and CCMSI paid for visits to Dr. Davis and later Dr. Ginzburg.  On short notice, CCMSI indicated that benefits would be terminated, and Auster became very upset.  Auster repeated threatening statements against a CCMSI employee similar to those he that he had been making since 1989 against people he believed had harmed him.  Although both Dr. Davis and Dr. Ginzburg agree that Auster is not violent, Dr. Davis felt it was his duty to inform CCMSI about the latest angry threats.  However, there is no foundation in fact that Auster communicated the threats to Dr. Davis directly for the purpose of furthering a crime or fraud   Accordingly, the court finds that

the government has not carried its burden of making a prima facie showing that Auster used his doctors as conduits for his extortionate threats, and the crime-fraud exception to the privilege does not apply.

### III. CONCLUSION

The court concludes that Dr. Davis' testimony is covered by the privilege that applies to confidential communications made to a psychotherapist and that the government has not established exceptions to the privilege or waiver of the privilege. Accordingly, Dr. Davis' testimony is inadmissible in a criminal proceeding against Auster.

New Orleans, Louisiana, this  12th  day of January, 2007.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**